OPINION
{¶ 1} On August 8, 1990, appellant, Steven Szekeres, sustained injuries when the motorcycle he was operating was struck by Paul Yost.
 {¶ 2} At the time of the accident, appellant lived with his parents, Donna and Martin Szekeres, and his sister, Pam Barker. The family home was covered under a homeowner's policy issued by appellee, State Farm Fire and Casualty Company.
 {¶ 3} At the time of the accident, appellant was employed by London Square Apartments, insured under a commercial automobile policy issued by appellee, Federal Insurance Company, and a general liability policy issued by appellant, Great Northern Insurance Company.
 {¶ 4} Mrs. Szekeres was employed by Timken Mercy Medical Center, insured under a commercial automobile policy issued by appellee, Northbrook Property and Casualty Insurance Company, a general liability policy issued by appellee, St. Paul Mercury Insurance Company and an umbrella policy issued by appellee, St. Paul Fire Marine Insurance Company.
 {¶ 5} Ms. Barker was employed by Mid American Imaging, Inc., insured under a commercial automobile policy issued by appellee Northbrook Property and a general liability policy issued by appellee, Northbrook Indemnity Company.
 {¶ 6} On April 27, 2000, appellant filed a complaint against appellee State Farm seeking uninsured/underinsured motorist coverage under the homeowner's policy. Appellant later filed amended complaints on December 11, 2000, February 12, 2001 and April 11, 2001 naming the additional insurance companies, seeking uninsured/underinsured motorist coverage under their respective policies.[1]
 {¶ 7} All parties filed motions for summary judgment. By judgment entry filed December 12, 2001, the trial court found in favor of appellees, denying appellant coverage under the policies.
 {¶ 8} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 9} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE FEDERAL INSURANCE COMPANY, AND FINDING THAT COVERAGE UNDER THE FEDERAL COMMERCIAL AUTO POLICY ISSUED TO CIVISTA CORPORATION WAS INVALIDATED AS A RESULT OF A SETTLEMENT WITH THE AT-FAULT DRIVER WHICH OCCURRED MANY YEARS BEFORE THE OHIO SUPREME COURT'S DECISION IN SCOTT-PONTZER."
II
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE GREAT NORTHERN, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO CIVISTA CORPORATION AND THAT APPELLANT IS NOT AN `INSURED' THEREUNDER."
III
 {¶ 11} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE NORTHBROOK PROPERTY AND CASUALTY, AND FINDING THAT COVERAGE UNDER THE NORTHBROOK COMMERCIAL AUTO POLICIES ISSUED TO TIMKEN MERCY MEDICAL CENTER AND MID-AMERICAN IMAGING, INC. WAS INVALIDATED AS A RESULT OF A SETTLEMENT WITH THE AT-FAULT DRIVER WHICH OCCURRED MANY YEARS BEFORE THE OHIO SUPREME COURT'S DECISION IN SCOTT-PONTZER."
IV
 {¶ 12} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE ST. PAUL MERCURY, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO TIMKEN MERCY MEDICAL CENTER AND THAT APPELLANT IS NOT AN `INSURED' THEREUNDER."
V
 {¶ 13} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE NORTHBROOK, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE CGL POLICY ISSUED TO MID AMERICAN IMAGING, INC AND THAT APPELLANT IS NOT AN `INSURED' THEREUNDER."
VI
 {¶ 14} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE ST. PAUL FIRE, AND FINDING THAT THE UDM COVERAGE ARISING BY OPERATION OF LAW UNDER THE UMBRELLA POLICY ISSUED TO TIMKEN MERCY MEDICAL CENTER WAS INVALIDATED AS A RESULT OF APPELLANT'S FAILURE TO GIVE `PROMPT NOTICE' OF THE CLAIM."
VII
 {¶ 15} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE STATE FARM, AND FINDING THAT UDM COVERAGE DOES NOT ARISE BY OPERATION OF LAW UNDER THE HOMEOWNER'S INSURANCE POLICY COVERING APPELLANT."
 I {¶ 16} Appellant claims the trial court erred in granting summary judgment to Federal. Specifically, appellant claims the trial court erred in finding coverage under the Federal commercial automobile policy was invalidated as a result of the settlement with the at-fault driver which occurred many years before the Supreme Court of Ohio's decision inScott-Pontzer v. Liberty Mutual Fire Insurance Co., 85 Ohio St.3d 660,1999-Ohio-292. We disagree.
 {¶ 17} Federal issued a commercial automobile policy to CIVISTA Corporation. CIVISTA owned the subsidiary which employed appellant. The policy contained uninsured/underinsured motorist coverage. The definition of an "insured" was similar to the language at issue in Scott-Pontzer. Accordingly, Federal did not dispute that appellant was an insured under the policy. However, Federal did dispute the fact that appellant failed to comply with the notice, consent, and subrogation provisions contained within the policy. As such, Federal argued appellant was unable to recover under the policy. Do the conditional provisions provided within the uninsured/underinsured motorist policy apply to the insureds? We answer in the affirmative for the following reasons.
 {¶ 18} We note uninsured/underinsured motorist coverage is not "created" by operation of law because said coverage already exists. We will look to the existing policy to determine this issue.
 {¶ 19} Appellant argues in Burkhart v. CNA Insurance, Stark App. No. 2001CA00265, 2002-Ohio-903, this court found the subrogation and notice provisions to be unenforceable. In Burkhart, the commercial automobile policy contained uninsured/underinsured motorist coverage as the case sub judice. In finding the provisions to be unenforceable, theBurkhart court relied on this Court's decision in Myers v. SafecoInsurance of America (February 18, 2000), Licking App. No. 99CA00083, reversed on the authority of Davidson v. Motorists Mutual Insurance Co.,91 Ohio St.3d 262, 2001-Ohio-36. Myers was not a commercial automobile policy with uninsured/underinsured motorist coverage, but a homeowner's policy that was determined to be a motor vehicle policy and coverage arose by operation of law. Further, the Myers court cited Demetry v. Kim
(1991), 72 Ohio App.3d 692, which also involved a policy that was created by operation of law.
 {¶ 20} We specifically find the Burkhart court's reliance onMyers to be in error.[2] We have yet to decide what happens to conditional provisions when an uninsured/underinsured motorist policy is already in existence and not created by operation of law.
 {¶ 21} Scott-Pontzer, besides providing lifetime employment for attorneys and judges, is the exception to the general rule that an insurance policy is a contract and the parties are bound by the provisions of the contract. See, Scott-Pontzer at 663, citing Nationwidev. March (1984), 15 Ohio St.3d 107, 109. Without arguing the absurd, we find the conditional provisions must carry through or there would be no need to have a written policy. Scott-Pontzer permits appellees to be insureds, but binds them to the conditional provisions of the policy under which they are insured.
 {¶ 22} The policy sub judice contains the following provisions:
 {¶ 23} "Promptly send us copies of the legal papers if a suit is brought." See, Section E(2)(b) of the Ohio Uninsured Motorist Coverage Endorsement, attached to Appellant's Brief as Exhibit B.
 {¶ 24} Further, the policy states "[t]his insurance does not apply to: Any claim settled without our consent" and "[a]ny judgment for damages arising out of a suit brought without our written consent is not binding on us." See, respectively, Section C(1) and Section A(3) of the Ohio Uninsured Motorist Coverage Endorsement, attached to Appellant's Brief as Exhibit B.
 {¶ 25} Under the clear mandate of Bogan v. Progressive CasualtyInsurance Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, subrogation provisions are enforceable in uninsured/underinsured motorist claims:
 {¶ 26} "Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage."
 {¶ 27} Appellant settled with the tortfeasor on July 26, 1991 without notifying Federal.
 {¶ 28} Based upon the subrogation and notice provisions which are enforceable contract conditions of the commercial automobile policy, uninsured/underinsured motorist coverage, we find appellant is not entitled to coverage under the commercial automobile policy issued by Federal.
 {¶ 29} Assignment of Error I is denied.
 II {¶ 30} Appellant claims the trial court erred in granting summary judgment to Great Northern. Specifically, appellant claims the trial court erred in finding uninsured/underinsured motorist coverage did not arise by operation of law under the general liability policy issued to CIVISTA, and further, that appellant was not an insured thereunder. We disagree.
 {¶ 31} In its December 12, 2001 judgment entry, the trial court found the general liability policy was not a motor vehicle liability policy subject to R.C. 3937.18. We agree. In Davidson, supra, the Supreme Court of Ohio examined R.C. 3837.18 coverage under a homeowner's policy. Writing for the court, Justice Francis Sweeney, who also wrote Selanderv. Erie Insurance Group, 85 Ohio St.3d 541, 1999-Ohio-287, explainedSelander as follows:
 {¶ 32} "Moreover, we never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle. Instead, Selander stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration." Davidson at 268.
 {¶ 33} The general liability policy sub judice states the following in pertinent part:
 {¶ 34} "This insurance does not apply to:
 {¶ 35} "AIRCRAFT-WATERCRAFT-AUTO
 {¶ 36} "bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any:
 {¶ 37} "1. aircraft;
 {¶ 38} "2. watercraft; or
 {¶ 39} "3. auto
 {¶ 40} "which any insured owns, operates, rents, or borrows. Use includes operation and loading or unloading.
 {¶ 41} "BUT
 {¶ 42} "this exclusion does not apply to:
 {¶ 43} "* * *
 {¶ 44} "3. liability of any insured arising out of the parking of an auto on or next to your premises; provided such auto is not owned by, rented or loaned to such insured." See, Pages 2-4 of 11 of the Financial Institutions General Liability Insurance, attached to Appellant's Brief as Exhibit C.
 {¶ 45} As noted, the policy contains a "valet parking" provision. Per Davidson, such a provision is not truly a motor vehicle provision but a property damage provision. The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself. We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond the pale.[3] We have steadfastly rejected extensions ofScott-Pontzer in other areas such as residence employee provisions in homeowner's policies (Vohsing v. Auto-Owners Insurance Co.,
Licking App. No. 01-CA-56, 2002-Ohio-250, Mattox v. Allstate InsuranceCo., Stark App. No. 2001CA218, 2002-Ohio-1453, Henry v. NationwideMutual Fire Insurance Co., Muskingum App. No. CT2001-0014, 2001-Ohio-1427) and we find this analysis to be of the same nature. The general liability policy is not a motor vehicle policy and therefore is not covered by R.C. 3937.18.
 {¶ 46} Appellant is not entitled to coverage under the general liability policy issued by Great Northern.
 {¶ 47} Assignment of Error II is denied.
 III {¶ 48} Appellant claims the trial court erred in granting summary judgment to Northbrook Property. Specifically, appellant claims the same issue as in Assignment of Error I, namely, the trial court erred in finding coverage under the Northbrook Property commercial automobile policies issued to Timken Mercy and Mid American were invalidated as a result of the settlement with the at-fault driver. We disagree.
 {¶ 49} Appellant's mother, Donna Szekeres, worked for Timken Mercy and appellant's sister, Pam Barker, worked for Mid American. Mrs. Szekeres and Ms. Barker lived in the same house with appellant at the time of the accident. Both policies contain uninsured/underinsured motorist coverage. The pertinent language contained in the policies is identical.
 {¶ 50} Northbrook Property concedes appellant is an insured under the policies pursuant to Scott-Pontzer and Ezawa v. Yasuda Fire andMarine Ins. Co., 86 Ohio St.3d 557, 1999-Ohio-124. However, Northbrook Property argues appellant failed to comply with the notice, consent and subrogation provisions in the policies, thereby precluding coverage. We agree.
 {¶ 51} The policies sub judice contain the identical provisions as cited in Assignment of Error I. See, Section A(3), Section C(1) and Section E(2)(b) of the Ohio Uninsured Motorist Coverage Endorsements, attached to Appellant's Brief as Exhibits D and E.
 {¶ 52} Again, appellant settled with the tortfeasor on July 26, 1991 without notifying Northbrook Property. For the same reasons set forth in our first assignment of error, we find the conditions in the policies applicable, thereby precluding coverage.
 {¶ 53} Appellant is not entitled to coverage under the commercial automobile policies issued by Northbrook Property.
 {¶ 54} Assignment of Error III is denied.
 IV, V {¶ 55} Appellant claims the trial court erred in granting summary judgment to St. Paul Mercury and Northbrook Indemnity. Specifically, appellant claims the trial court erred in finding uninsured/underinsured motorist coverage did not arise by operation of law under the commercial general liability policies issued to Timken Mercy and Mid American, and further, that appellant was not an insured thereunder. We disagree.
 {¶ 56} In its December 12, 2001 judgment entry, the trial court found appellant was not an insured under either policy. We agree. The general liability policies do not include language which would protect family members of the insured.
 {¶ 57} The St. Paul Mercury policy states the following in pertinent part under "Who Is Protected Under This Agreement":
 {¶ 58} "Corporation or Other Organization. If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers, directors and trustees are protected persons only for their duties as your officers, directors or trustees. And your stockholders are protected persons only for their liability as your stockholders.
 {¶ 59} "* * *
 {¶ 60} "Worker Protection. Your employees, students and authorized volunteer workers are protected persons only while working for you within the scope of their duties." See, Page 4 of 12 of St. Paul's Commercial General Liability Protection Coverage, attached to Appellant's Brief as Exhibit F.
 {¶ 61} Unlike the language contained in the Scott-Pontzer andEzawa policies, the definition of an "insured" in the policy sub judice does not contain any language referencing "any family member." While appellant's mother is an insured under the St. Paul Mercury policy while working within the scope of her duties, appellant is not. Assuming, arguendo, we found uninsured/underinsured motorist coverage arose by operation of law, appellant is not an insured under the policy.
 {¶ 62} We draw the same conclusion as to the Northbrook Indemnity policy issued to Mid American. The policy states the following in pertinent part under "Who Is An Insured":
 {¶ 63} "1. If you are designated in the declarations as:
 {¶ 64} "* * *
 {¶ 65} "c. An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.
 {¶ 66} "2. Each of the following is also an Insured:
 {¶ 67} "a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. * * *" See, Page 9 of 18 of Northbrook Indemnity's Commercial General Liability Coverage Form, attached to Appellant's Brief as Exhibit G.
 {¶ 68} Again, the language of this policy is unlike the language contained in the Scott-Pontzer and Ezawa policies which defined an "insured" to include family members. While appellant's sister is an insured under the Northbrook Indemnity policy for acts within the scope of her employment, appellant is not. For a similar result, see Walton v.Continental Casualty Co., Holmes App. No. 02CA002, 2002-Ohio-3831.
 {¶ 69} Assignments of Error IV and V are denied.
 VI {¶ 70} Appellant claims the trial court erred in granting summary judgment to St. Paul Fire regarding the umbrella policy issued to Timken Mercy. We disagree.
 {¶ 71} Timken Mercy was insured under a commercial automobile policy issued by Northbrook Property, a general liability policy issued by St. Paul Mercury and the umbrella policy issued by St. Paul Fire. In Assignment of Error III, we found appellant was not entitled to coverage under the commercial automobile policy because appellant failed to abide by the terms of the insurance contract. In Assignment of Error IV, we found appellant was not entitled to coverage under the general liability policy because appellant was not an insured under the policy.
 {¶ 72} The umbrella policy states the following under "What This Agreement Covers":
 {¶ 73} "Bodily Injury and Property Damage Liability
 {¶ 74} "We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
 {¶ 75} "happens while this agreement is in effect; and
 {¶ 76} "is caused by an event.
 {¶ 77} "* * *
 {¶ 78} "Coverage In Addition To Basic Insurance
 {¶ 79} "When a claim or suit covered by this agreement is covered by your Basic Insurance, we'll pay damages you and others protected by this agreement are legally required to pay if those damages exceed the coverage limits of your Basic Insurance. But we'll only pay amounts up to the limits of coverage under this agreement.
 {¶ 80} "* * *
 {¶ 81} "Your Basic Insurance is shown on the Schedule of Basic Insurance. It doesn't matter whether you bought the insurance from us or from other insurance companies. We refer to this insurance as your Basic Insurance in this agreement." See, Page 2 of 14 of the Umbrella Excess Liability Protection Policy, attached to Appellant's Brief as Exhibit H.
 {¶ 82} The Northbrook Property commercial automobile policy and the St. Paul Mercury general liability policy are included on the Schedule of Basic Insurance. See, Schedule of Basic Insurance, Form 43666, attached to Appellant's Brief as Exhibit H.
 {¶ 83} Based upon the clear meaning of the insurance contract, the umbrella policy does not apply because appellant was not entitled to coverage under the underlying insurance policies.
 {¶ 84} Assignment of Error VI is denied.
 VII {¶ 85} Appellant claims the trial court erred in granting summary judgment to State Farm regarding the homeowner's policy. We disagree.
 {¶ 86} Appellant argues the homeowner's policy is a motor vehicle policy by virtue of the "residence employee" language contained in the policy. This court has previously addressed the issue of whether "residence employee" language in a homeowner's policy elevates the policy to a motor vehicle policy subject to uninsured/underinsured motorist coverage, and has consistently held such language does not give rise to the mandates of R.C. 3938.17. See, citations cited supra under Assignment of Error II.
 {¶ 87} Assignment of Error VII is denied.
 {¶ 88} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
topic: insurance issues.
By Farmer, J., Boggins, J. concurs.
Hoffman, P.J. concurs in part and dissents in part.
[1] On July 26, 1991, appellant settled with the tortfeasor. Further, appellant settled with Tim's Tavern, the facility wherein Mr. Yost had become intoxicated.
[2] The Burkhart panel consisted of Judges Hoffman, Wise and Boggins. The panel in Myers consisted of Judges Wise and Edwards and a visiting judge. Therefore, because Myers contains a different fact pattern thanBurkhart, we are not bound by it as precedence.
[3] This writer notes a direct conflict with this court's decision inCox v. State Farm Fire and Casualty Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, which this writer wrote. Cox involved a "valet parking" provision identical to a provision reviewed in Burkhart, supra. TheBurkhart court found the provision elevated the general liability policy to a motor vehicle policy, finding Selander, and not Davidson applied. This writer adopted this holding in Cox. Upon revisiting this "valet parking" provision which is identical in the case sub judice, this writer concedes error in the Cox decision and adopts the reasoning set forth above.